In re Fred W. **ALLNUTT**, Sr., Debtor.

Joanne A. **ALLNUTT**, Plaintiff,

v.

**ASSOCIATES LEASING, INC.**, Miller & Miller Auctioneers, Inc., Charles J. Miller, Inc., Urban N. Zink Contractors, Inc., and Mark Friedman, Chapter 11 Trustee of the Estate of Fred W. Allnut, Sr., Defendants.

Bankruptcy No. 92–5–7401.
Adversary No. 96–5598–JS.

United States Bankruptcy Court,
D. Maryland,
at Baltimore.

March 20, 1998.

Mark J. Friedman, Piper & Marbury, Baltimore, MD, for Chapter 11 Trustee.

Jeffrey L. Friedman, Friedman & Kline, Reisterstown, MD, for Miller & Miller Auctioneers, Inc.

Steven N. Leitess, Leitess & Associates, P.A., Baltimore, MD, for Associates Leasing, Inc.

Tracy E. Mulligan, Rockville, MD, for Joanne A. Allnutt.

F. Thomas Rafferty, Blum, Yumkas, Mailman, Gutman & Denick, P.A., Baltimore, MD, for Urban N. Zink Contractors, Inc.

Elwood E. Swam, Hampstead, MD, for Charles J. Miller, Inc.

*MEMORANDUM OPINION IMPOSING SANCTIONS JOINTLY AGAINST PLAINTIFF AND PLAINTIFF'S COUNSEL IN THE AMOUNT OF $66,929.01*

JAMES F. SCHNEIDER, Bankruptcy Judge.

During the pendency of the debtor's Chapter 11 bankruptcy case, his non-filing spouse filed the instant complaint in a state court against nondebtor defendants for wrongful detainer and conversion of property which she alleged was sold by her husband's Chapter 11 trustee and in which the plaintiff alleged she held an undivided interest as tenant by the entireties. The defendants removed the suit to this Court, where the Chapter 11 bankruptcy case of the plaintiff's husband, Fred W. Allnutt, Sr. ("Allnutt," or "debtor"), is pending. The plaintiff moved to remand. The Chapter 11 trustee, who was not sued with the original defendants, filed a motion to intervene. The defendants moved to dismiss the complaints and to impose sanctions against the plaintiff and her counsel. The plaintiff filed oppositions to the motions to dismiss and the motion for sanctions. For the reasons stated, the Chapter 11 trustee's motion to intervene will be granted, the plaintiff's motions to remand will be denied, the motions to dismiss will be granted, and the motion for the imposition of sanctions against both the plaintiff and her attorney will be granted. In addition, a permanent injunction will issue against the debtor, his insiders and agents, including his, her, or their attorneys, from contesting the validity of sales of property of the bankruptcy estate by the Chapter 11 trustee, subject to additional sanctions.

*FINDINGS OF FACT*

On September 27, 1996, the plaintiff, Joanne Armstrong Allnutt, a resident of Maryland and the wife of the Chapter 11 debtor in this case, filed the instant suit in the Circuit Court for Howard County, Maryland. The suit stated that the plaintiff and Fred W. Allnutt, Sr., have been husband and wife since 1958.

The defendants sued in the state court were Miller & Miller Auctioneers, Inc. ("Miller & Miller"), a Texas corporation; Associates Leasing, Inc. ("Associates"), a Virginia corporation; Charles J. Miller, Inc. ("Charles J. Miller"), a Maryland corporation; and Urban N. Zink Contractors, Inc. ("Zink"), also a Maryland corporation (collectively, "the original defendants"). They removed the suit to this Court.

The cause of action which forms the gravamen of the complaint arose out of actions taken by the debtor's Chapter 11 trustee in the bankruptcy court in connection with a court-approved sale of assets of the bankruptcy estate. The eight-count complaint sought the return of the property or damages in the amount of $40,555,167.23, from Miller & Miller; the return of property or damages in the amount of $19,720,464.74, from both Miller & Miller and Associates; the return of property or damages in the amount of $523,182.00, from Charles J. Miller; and the return of property or damages from Zink in the amount of $281,167.00. Exhibit A to the complaint was the bill of sale dated September 29, 1993, signed by the trustee and Miller & Miller; Exhibit B to the complaint identified the property sought to be recovered by the plaintiff as the same inventory of assets sold by the trustee to Miller & Miller. The complaint was signed by "Tracy E. Mulligan, attorney for Plaintiff."

The notorious career of Fred W. Allnutt, Sr., ("Allnutt" or "debtor") as a tax protester has inspired a well-documented odyssey of seemingly endless litigation in the state and federal courts over the past 14 years.[1]

---

1. *Allnutt v. State*, 59 Md.App. 694, 478 A.2d 321 (1984), *cert. denied*, 301 Md. 639, 484 A.2d 274 (1984), *appeal dismissed*, 471 U.S. 1050, 105 S.Ct. 2108, 85 L.Ed.2d 474 (1985)(criminal conviction of debtor for willful failure to file a 1981 state income tax return, sales tax returns and to pay sales tax); *Allnutt v. Comptroller of Treasury*, 61 Md.App. 517, 487 A.2d 670 (1985) *cert. denied*, 303 Md. 295, 493 A.2d 349 (1985) (no right to jury trial in the Maryland Tax Court); *Howard County v. Fred W. Allnutt, Inc.*, 74 Md.App. 422, 538 A.2d 321 (1988)(priorities of liens for unpaid sales tax); *Allnut v. Comptroller of Treasury*, 77 Md.App. 424, 550 A.2d 728 (1988), *cert. denied*, 315 Md. 307, 554 A.2d 393 (1989)(denial of injunction to debtor to enjoin assessment and collection of Maryland income tax and imposing $1,275 sanction against Allnutt and counsel);

On October 2, 1992, the Internal Revenue Service ("IRS") filed suit in the U.S. District Court for the District of Maryland and obtained an order permitting it to seize the assets of the debtor's company, then known as JFC Excavating ("JFC").[2] Thereafter, the IRS seized and impounded the heavy equipment of JFC for non-payment of taxes.

On October 7, 1992, JFC, Christopher Allnutt, the son of Fred W. Allnutt, Sr., together with Sovereign Equipment Association, Constitution Leasing Association, and Ellicott Building Association, filed suit against the IRS in the U.S. District Court for the District of Maryland to recover the assets of JFC, a company owned and controlled by Allnutt. JFC was identified in the complaint as "an unincorporated Maryland partnership," while each of the other three associations was identified as "a Maryland trust." The three associations were created by Fred W. Allnutt, Sr., to hold title to the assets of JFC for the purpose of evading the payment of various federal, state and local taxes. The suits were later consolidated, and on January 20, 1993, Allnutt joined the suit.

On October 9, 1992, one day after the U.S. District Court [Northrop, J.] denied the plaintiffs' request for an interlocutory injunction against the IRS, Allnutt filed a voluntary Chapter 11 bankruptcy petition[3] in the U.S. Bankruptcy Court for the District of Maryland. On the same day, Allnutt filed Adversary Proceeding No. 92–5475 in this Court, seeking an injunction to require the IRS to return the JFC property to him. In light of Allnutt's public record as a tax protestor and the U.S. District Court's refusal to order the IRS to return the JFC property, this Court declined to order the IRS to unconditionally return the assets of JFC to Allnutt to operate as a debtor in possession. However, on October 27, 1992, upon the suggestion of this Court, and by agreement of Allnutt and the IRS, the United States Trustee appointed Mark J. Friedman, Esquire, as operating Chapter 11 trustee. This facilitated the turnover of excavating equipment by the IRS to Mr. Friedman and the resumption of the business of JFC under the aegis of the U.S. Bankruptcy Court.

Except for the aforementioned suit against the IRS, Allnutt steadfastly disavowed owning the assets of JFC in an effort to avoid the tax consequences of that ownership. At no time during the administration of the bankruptcy case did Allnutt claim that the assets of JFC were exempt from administration by the trustee as property held by the entireties or otherwise.[4] Instead, he disput-

*Allnutt v. Commissioner,* No. 9225–89, 1991 WL 2061 (U.S.Tax Ct. Jan. 14, 1991), *aff'd by unreported opinion,* 956 F.2d 1162 (4th Cir.1992), *cert. denied,* 506 U.S. 816, 113 S.Ct. 57, 121 L.Ed.2d 25 (1992)(upholding debtor's federal income tax liability for tax years 1981 through 1986, and imposing sanction of $25,000 against the debtor); *Allnutt v. U.S., et al.,* No. 92–9778 (D.Md. June 21, 1993)(holding that Allnutt was the sole owner of entities created by him to thwart collection of taxes); *Allnutt v. Aronin,* 8 F.3d 816, 1993 WL 431064 (4th Cir.1993)(affirming removal from state court and dismissal of Allnutt's complaint for damages against the U.S. and others, including Marc Aronin, the IRS agent involved in the seizure of JFC assets); *In re Allnutt,* 16 F.3d 408, 1994 WL 5128 (4th Cir.1994)(denying Allnutt's petition for mandamus to order the U.S. district court to remand his complaint against the U.S. to the state court); *Allnut v. Friedman (In re Allnutt),* Nos. 94–2957, 94–3612, 1995 WL 45797 (D.Md. January 20, 1995)(moot issues of debtor's tax liability); *Allnutt v. Friedman (In re Allnutt),* No. 95–11, 1995 WL 222067 (D.Md. April 10, 1995)(affirming refusal by bankruptcy court to vacate district court orders determining debtor to be owner of assets of entity owned or controlled by debtor, and

imposing $28,121 sanction against debtor and additional $1,404 sanction against debtor and counsel jointly for filing frivolous appeal); *Allnutt v. IRS,* No. 93–5121 (Bankr .D.Md.)(dismissed by order [Teel, B.J.] entered October 28, 1997); *Allnutt v. IRS,* No. 94–CV–3491 (D.Md.1994)(complaint brought under the Freedom of Information Act, dismissed upon motion for summary judgment, November 9, 1995).

2. The debtor's company was formerly known as "Fred W. Allnutt, Inc." *Howard County v. Fred W. Allnutt, Inc.,* 74 Md.App. 422, 538 A.2d 321 (1988)(priorities of liens for unpaid sales tax); *Fred W. Allnutt, Inc. v. Commissioner of Labor and Industry,* 289 Md. 35, 421 A.2d 1360 (1980).

3. Incomplete schedules were also filed by Allnutt's counsel that did not contain a list of property claimed as exempt.

4. On January 22, 1993, the Chapter 11 trustee filed *unsigned* schedules and statements of affairs prepared by Allnutt [P. 64]. The trustee noted that Allnutt had claimed exemptions in certain property not relevant here under the federal exemptions contained in Section 522 of the Bank-

ed the inclusion of JFC in the bankruptcy estate by renouncing his ownership of its assets. At no time during the administration of the bankruptcy case did Mrs. Allnutt assert a claim to the assets of JFC. If there ever was property of JFC held by the entireties by Allnutt and the plaintiff, they concealed this fact from the trustee and this Court.

On February 9, 1993, the Chapter 11 trustee filed an objection [P. 94] to the exemptions which the debtor claimed merely "to state a position as to the Proposed Exemptions," namely that they were not properly claimed in accordance with the state exemption statute. In his objection, the trustee set forth an enumeration of the assets that were subject to his administration:

> In addition to the Debtor as an individual, the Chapter 11 Trustee is also administering a business known as JFC Excavating which. is engaged in business as an excavation contractor. In addition and in connection with the JFC Excavating business, the Chapter 11 Trustee is administering the following:
>
> (a) the real property and building located at 10370 Baltimore national Pike, Ellicott City, Maryland which serves as the business premises for JFC Excavating and for which the recorded owner is an entity identified as Ellicott Building Association;
>
> (b) the vehicles which are and have been used in the JFC Excavating business, which are registered in the name of an entity known as Constitution Leasing Association;
>
> (c) various off-road excavation and related equipment which has been and is used in the JFC Excavating business and which

is represented by the Debtor to be owned by an entity known as Sovereign Equipment Association.

Trustee's objection to exemptions [P. 94].

The Chapter 11 trustee intervened in the district court litigation and filed a counterclaim and third-party complaint for turnover of property, avoidance of fraudulent conveyances and injunctive relief. The trustee alleged that JFC and the associations were the alter egos of the debtor who exercised such dominion and control over them that they were his instrumentalities, and that he was their beneficial owner.

On June 21, 1993, Allnutt's assertions to the contrary, U.S. District Judge Frederic N. Smalkin upheld the trustee's contentions, and held that JFC and its related entities were indeed the sole property of Fred W. Allnutt, Sr., therefore includable in the debtor's bankruptcy estate, and entered summary judgment in favor of the IRS on Allnutt's claim of wrongful levy. Essential to Judge Smalkin's decision in the U.S. District Court litigation was the following finding of fact:

> [T]he devices employed by Mr. Allnutt, Sr., to hide his assets from the tax collector are so transparently shams and fraud that no reasonable fact-finder could give credence, by any known standard of evidence, to the wrongful levy plaintiffs' ownership claims to the property in question. Indeed, no fact-finder functioning within the realm of intelligence and. common sense, let alone guided by reason, could so find.

*Allnutt v. U.S., Etal,* No. 92–9778, Memorandum Opinion at p. 4 .[5]

---

ruptcy Code, which are not available to debtors in Maryland. The only property claimed exempt by Allnutt and the plaintiff were household items characterized as "community property." The trustee informally agreed not to sell any property which Allnutt and the plaintiff claimed to own jointly. Affidavit of Mark J. Friedman dated February 7, 1997, ¶ 3 (Exhibit 8 to Trustee's motion to dismiss and for sanctions) [P. 16].

**5.** After Allnutt and the plaintiffs in the wrongful levy action filed an appeal to the U.S. Court of Appeals for the Fourth Circuit, they entered into a settlement agreement with the trustee which this Court approved by order [P. 335] entered on

June 22, 1994, supplemented as to the IRS by order [P. 395] entered on September 8, 1994, which dismissed the appeal. The agreement between the Chapter 11 trustee, Allnutt and his children, and one Marsden Furlow stated in pertinent part, as follows:

> In accordance with, and based upon, the District Court Judgment, the Settling Defendants agree, for the purposes of the Bankruptcy Case and any other action, proceeding or matter involving the Trustee, Mark J. Friedman, individually and/or the bankruptcy estate, that all the property administered by the Trustee, presently or in the past, is property of the Bankruptcy Estate (specifically including, but

On September 29, 1993, this Court entered an order [P. 236] authorizing the Chapter 11 trustee to sell substantially all equipment, vehicles and miscellaneous parts used in the JFC Excavating business free and clear of liens and encumbrances to Miller & Miller Auctioneers, Inc., for a purchase price of $6.6 million; authorizing the trustee to sell real property known as 10370 Baltimore National Pike [6], and furniture, fixtures and related office equipment to Nicholas B. Mangione, Sr.; and authorizing the trustee to assume and assign certain executory contracts to Nicholas B. Mangione, Sr., for a purchase price of $800,000. Allnutt, who was represented by counsel, endorsed the sale as approved. The order approving the sale pursuant to Section 363 of the Bankruptcy Code was entered at the conclusion of a two-day hearing and contained the following provisions:

> The notice of the Original Motion served upon creditors and other parties in interest adequately explains the basis for the chapter 11 Trustee's decisions to sell the Inventory, Real property and FFE [furniture, fixtures and equipment] and the assumption and assignment of the executory contracts and no additional notice for the Amended Motion is required.

> The notice of the hearing on the Original Motion was timely served upon all creditors and other parties in interest upon whom service was required and the notice satisfies the provisions of Bankruptcy Rules 2002, 6004 and 9006.

> This Court finds that M & M [Miller & Miller] and Mangione have acted, and that their offer was submitted, in good faith. M & M and Mangione are entitled to the

protection of Section 363(m) of the Bankruptcy Code in connection with the consummation of the Agreement to be entered into by them with the Chapter 11 Trustee, attached hereto, which is hereby approved. The consideration of offers by the Chapter 11 Trustee was conducted upon fair and reasonable terms calculated to achieve the highest and best value for the assets used in connection with the JFC Excavation Business.

Paragraphs C, D and G, Order of September 29, 1993 [P. 236].

After the sale was approved, Miller & Miller resold equipment, vehicles and miscellaneous parts used in the JFC Excavating business to Associates, Charles J. Miller, Inc., and Zink.

Associates' parent company, Associates Commercial Corporation, was a prepetition secured creditor of Allnutt's bankruptcy estate by reason of its security interests in heavy construction equipment of JFC, doing business as Sovereign Equipment Company. Claim No. 17 filed February 11, 1993, in the secured amount of $244,528.05. On March 4, 1993, Associates Commercial Corporation filed a motion for relief from stay in the Allnutt bankruptcy case [P. 120], but consented to defer the motion pending a sale. Associates leased the items it purchased to Mr. Mangione, in lieu of granting him a chattel mortgage. Charles J. Miller, a small company owned by three brothers, bought one excavator. Zink bought one power grader.

By order [P. 573] entered on March 30, 1995, this Court confirmed the Chapter 11 trustee's plan of liquidation [7] [P. 489], that

---

not limited to, JFC Excavating, all revenues derived therefrom and the proceeds of the JFC Excavating Sale) and the Settling Defendants acknowledge no further rights therein.
Settlement Agreement, ¶ 8 [P. 326].

**6.** By stipulation and order [P. 241] entered on the record on October 29, 1993, this Court approved an agreement between the trustee and Smith W. Allnutt and Margaret G. Allnutt, the debtor's parents, to the effect that the mortgage lien held by the debtor's parents on the real estate known as 10370 Baltimore National Pike in the amount of $61,618.90, would attach to the proceeds of sale and that they would be paid in full no later than October 31, 1993.

**7.** The Plan contained the following relevant provisions:

> *6.4. Cancellation of Debtor's Interest in the Estate.* On the Effective Date of the plan, all of the Debtor's Interest in assets and property of the Estate shall be canceled without further action by the Trustee or the Court except as otherwise provided in the Plan and except to the extent the Court allows the Debtor to exempt, or otherwise exempts, any property from the estate consistent with Section 522 of the Bankruptcy Code.

> *8.1. General Discharge of and Release from Claims and Interests.*

extinguished the rights of the debtor and those claiming through him to property of the estate.[8]

(a) Except as expressly otherwise provided in the Plan and except as provided by Section 523 of the Bankruptcy Code, or by Order of the Court, effective on the Effective Date, confirmation of the Plan shall fully discharge and release the Debtor, pursuant to section 1141(d)(1)(A) of the Bankruptcy Code, from any and all Claims, including, without limitation, debts, demands and liabilities, that arose before the Confirmation Date and all debts of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code whether or not:

(i) a proof of claim based on such Claim has been or is deemed to have been filed under Section 501 of the Bankruptcy Code;

(ii) such Claim is an Allowed Claim or disallowed under Section 502 of the Bankruptcy Code;

(iii) such Claim arises in connection with a cause of action pending against the Debtor on the Confirmation Date; or

(iv) any Claimant has accepted the Plan.

(b) The distributions and rights afforded in the Plan to Claimants, unless otherwise provided in the Plan, the Bankruptcy Code or by Order of the Court, shall be in complete and full satisfaction, discharge and release of all Claims against the Debtor and the Estate or any of their respective assets or properties of any nature whatsoever and, except as expressly provided in the Plan, the Bankruptcy Code or by Order of the Court, all creditors shall be precluded forever from asserting against the Debtor, the estate or their assets and properties any other or further liabilities, liens, Claims, encumbrances, obligations, or equity interests, including, but not limited to all principal and accrued and unpaid interest on the debts of the Debtor based on any act or omission, transaction or other activity or security instrument or other agreement of any kind or nature occurring, arising or existing prior to the Confirmation Date, that was or could have been the subject of any Claim, whether or not allowed.

(c) On and after the Confirmation Date, as to every discharged Claim, every holder of a discharged Claim shall be precluded from asserting against the Debtor and the Estate or their respective assets or properties any further Claim based on any document, instrument or act, omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date. In accordance with the foregoing, except as provided in this Plan, the Confirmation order, the Bankruptcy Code or by Order of the Court, the Confirmation order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtor and the Estate. Pursuant to Sections 524 and 1141 of the Bankruptcy Code, such discharge shall void any judgment obtained against the Debtor or the Estate, at any time, to the extent that such judgment relates to a discharged Claim.

8.2. *Bankruptcy Injunction.* Except as otherwise provided in this Plan or the Confirmation Order, effective on the Confirmation Date, all persons that have held, currently hold or may hold a Claim or other debt or liability that is discharged or a Claim against the Debtor or the Estate that is terminated, or canceled pursuant to the terms of this Plan, are permanently enjoined from taking any of the following actions against the debtor, the Estate and the respective property and assets: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Estate or the debtor; and (e) commencing or continuing any action in any manner or any place that does not comply with or is inconsistent with the provisions of the Plan.

8.6. *Rights of Action.* Pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Estate will retain, and the Trustee will have the exclusive right to enforce, any and all present or future rights or causes of action against any Person and rights of the Estate that arose before or after the Filing Date, including but not limited to, avoidance powers granted to the Trustee under the Bankruptcy Code and all causes of action and remedies granted pursuant to Sections 502, 510, 541, 544, 545, 547 through 551 and 553 of the Bankruptcy code, other than those specifically compromised as part of the Plan or previously waived by the Trustee.

Trustee's plan of liquidation [P. 489], ¶¶ 6.4, 8.1, 8.2, 8.6.

**8.** The order of confirmation contained the following provisions:

3. On the Effective Date, all legal right, title and interest in and to the assets and property of the bankruptcy estate shall remain subject to administration by the Trustee in order to implement the Plan and shall not revest in the Debtor.

4. Pursuant to Article 6.4 of the Plan, on the Effective Date of the Plan, all of the Debtor's interest in assets and property of the bankruptcy estate shall be canceled without further action by the Trustee or by the Court.

5. As of the Effective Date of the Plan, the Debtor shall be fully discharged and released, except as otherwise provided by the Plan, pursuant to Section 1141(d)(1)(A) of the Bankruptcy Code, from any and all claims, including without limitation, debts, demands and liabilities that arose before the Confirmation Date, except as provided by Section 523 of the Bankruptcy Code or otherwise by order of this Court ...

Allnutt's obstructionist tactics have prolonged the duration of this Chapter 11 and so multiplied the proceedings that the files in his bankruptcy case, exclusive of appeals and adversary proceedings, extend nearly four feet in length, comprising some 24 file folders, not counting a claims file. Allnutt has filed untold numbers of groundless objections in the bankruptcy court and numerous appeals to the U.S. district and circuit courts. In addition, he has actively pursued various sellers and purchasers of bankruptcy estate assets by filing nuisance suits against them in state courts, which the defendants later removed to this Court.[9] The instant adversary proceeding came about when, for the second time in two years, Joanne A. Allnutt, the Chapter 11 debtor's non-filing spouse, sued purchasers of bankruptcy estate property in a non-bankruptcy forum [10].

Although the Chapter 11 case involving the plaintiff's husband was and is still pending, the plaintiff did not obtain leave to file the state court complaints, nor did she pursue any of her alleged rights before this Court. Instead, on September 27, 1996, two days short of the third anniversary of the bankruptcy court order that approved the sale, Joanne A. Allnutt filed an eight-count complaint in the Circuit Court for Howard County against Miller & Miller, Associates, Charles J. Miller, and Zink, for detinue and conversion of the property "sold out of bankruptcy by Mark J. Friedman, Trustee." The plaintiff alleged that "all property claimed herein has been acquired by the plaintiff,

Joanne Armstrong Allnutt, and Fred W. Allnutt, Sr., during their marriage, through their joint efforts, and is owned by the plaintiff, Joanne Armstrong Allnutt as tenant by the entirety." The plaintiff further alleged that the assets sold were first acquired from a loan on a residence held by the debtor and plaintiff as tenants by the entireties. The complaint sought the return of the property or the value of the property and damages for its wrongful retention. The total value the plaintiff attributed to the property was $15,716,650. Total damages sought from all defendants was $45,363,330.97.

Exhibits to the pleadings included joint tax returns filed by Mr. and Mrs. Allnutt during the period covering the late 1960s and early 1970s that indicated JFC was an excavating business operated as a sole proprietorship and owned solely by Mr. Allnutt. Other exhibits included various promissory notes bearing the sole name of Fred W. Allnutt, Sr., as the stated owner. While the plaintiff's name and signature did appear on several documents, they were co-signed by her individually or as secretary. In the debtor's attempts to deny ownership of the business, his statements taken at various depositions indicated that he was operating as a sole proprietorship and that he sold the business to his sons in 1983. The affidavit of one son, Christopher S. Allnutt, stated that he and his brother became the owners of their father's excavating business in 1983. All of this evidence was elicited in the bankruptcy case at a time when the debtor was attempting to

8. Notwithstanding anything to the contrary, this Court retains jurisdiction in this bankruptcy case in accordance with the provisions of Article 11 of the Plan.
Order of confirmation [P. 573], entered March 30, 1995, ¶¶ 3–5, 8.

9. *Allnutt v. Lewis*, No. 94–5195–JS (Bankr. D.Md., removed April 29, 1994) (Charles Lewis was an employee of Miller & Miller Auctioneers); *Allnutt v. Miller & Miller Auctioneers*, No. 94–5328–JS (Bankr.D.Md., removed July 28, 1994); *Allnutt v. Wilcoxson*, No. 94–5413–JS (Bankr. D.Md., removed September 28, 1994), 105 F.3d 646, 1997 WL 9762 (4th Cir.1997) (Stephen L. Wilcoxon was the vice president of Atlantic Auctions, which sold the race car assets).

10. On November 16, 1994, Mrs. Allnutt filed suit in the Circuit Court for Howard County against

the purchasers of the so-called "race car assets" obtained by sale conducted by the Chapter 11 trustee under the auspices of the U.S. Bankruptcy Court. She was represented by Tracy E. Mulligan, Esquire, the same attorney who is representing her in the instant suit. The claim in that suit was the same as the instant suit, namely, that assets of the estate sold by the Chapter 11 trustee were owned by Mr. and Mrs. Allnutt as tenants by the entireties. After the case was removed to the U.S. Bankruptcy Court, this Court denied the plaintiff's motion to remand, deferred the defendants' motions to dismiss, and ordered the plaintiff to join the Chapter 11 trustee as a defendant. *Allnutt v. Metro Recovery, Ltd., et. al.*, No. 94–5501–JS (Bankr.D.Md., order entered Sep. 26, 1995). Instead, the plaintiff filed a motion for interlocutory appeal to the U.S. District Court, and while the motion was pending, dismissed the suit on March 5, 1996.

repudiate his ownership of the assets. The plaintiff now claims, in spite of all the statements of her family to the contrary, that she held an interest as a tenant by the entireties in the property sold by the Chapter 11 trustee to the defendants.

On December 30, 1996, Associates Leasing, Inc. removed the plaintiff's suit against it to the U.S. Bankruptcy Court (Adversary Proceeding No. 96–5598). This was followed on January 2, 1997, by the removal of the plaintiff's suit by Miller & Miller Auctioneers, Inc. (Adversary Proceeding No. 97–5017), and on January 15, 1997, by the removal of the suit by Charles J. Miller, Inc. (Adversary Proceeding No. 97–5047). The Chapter 11 trustee was not sued in the state court, but filed a motion to intervene after the suit was removed to the bankruptcy court.

The plaintiff filed objections to removal and motions to remand each adversary proceeding to the Circuit Court for Howard County. The defendants moved to dismiss the complaints and the plaintiff filed oppositions to those motions. Associates filed a motion to impose sanctions against both the plaintiff and her attorney, in which the other defendants joined.[11]

At the hearing before this Court on February 24, 1997, Tracy E. Mulligan stated that he practices in the state and federal courts of Maryland. His federal practice is primarily centered in the Greenbelt division of the U.S. Bankruptcy Court for the District of Maryland. Mr. Mulligan angrily charged that the Chapter 11 trustee did not properly administer the bankruptcy case. The fact that the Chapter 11 trustee's conduct is at the center of this controversy is evident from Mr. Mulligan's comments on the record:

The statutes and the cases are what have guided me in this case. The statutes tell me that this case was not handled properly and that an attempt has been made to sell something that should not have been sold and could not have been sold out of the bankruptcy court under the procedures that were followed.

Mr. Mulligan defended the proposition that the debtor would recover much of the property that the trustee had sold with bankruptcy court approval if this suit were successful and argued that such a recovery would be proper. When asked by this Court if he did not agree that a lawsuit against innocent purchasers was outrageous, Mr. Mulligan replied: "The way that they [the debtor and the plaintiff] have been financially destroyed is also a bit outrageous." Questioned further by this Court as to whether the debtor was the moving force behind this lawsuit, Mr. Mulligan significantly replied:

I did not even know the *Allnutts*. *They* came to me after the sale.

[Emphasis supplied.] After stating that he was ignorant as to what had happened in the Allnutt bankruptcy case, Mr. Mulligan contradicted himself and said:

I presented this in good faith. I made a careful study of the facts and as I saw the facts and applied them to the law, it seemed to me that [the plaintiff's] interests had not been properly handled by the bankruptcy trustee but that the sale was complete and the proper forum to determine whether she had title to the property or not is the state court. That's consistent with many of the cases that I have carefully researched.

Mr. Mulligan was completely unrepentant for bringing the instant lawsuit and argued that this Court could not impose sanctions under Federal Rule of Civil Procedure 11 because the lawsuit was filed in state court, rather than federal court.

This Court reminded Mr. Mulligan that he might have been ignorant of the facts of this case at one time, but that by the date of the hearing he could no longer claim ignorance of those facts. Since the time of the filing of the earlier lawsuit in 1994, he has been in full possession of those facts, this Court having advised him that a valid sale had occurred under the aegis of the bankruptcy court as to the race car assets. Mr. Mulligan voluntarily dismissed that suit after suing innocent purchasers in the state court and after filing an

---

11. On February 13, 1998, this Court consolidated the three separate adversary proceedings into the

instant pending adversary proceeding.

interlocutory appeal of this Court's requirement that he join the trustee as a necessary party.

Mark J. Friedman, the Chapter 11 trustee, stated that Mrs. Allnutt also knew and understood that a valid sale of the JFC assets had taken place in the bankruptcy court, because she was present at the hearing on the motion to sell before this Court and was also present at the Chapter 11 trustee's office when the sale agreement was executed. As further confirmation that the plaintiff knew exactly what was happening, the trustee indicated that on the latter occasion, Mrs. Allnutt "asked me whether any further actions would be initiated by me to recover any other assets of the bankruptcy estate." Affidavit of Mark J. Friedman dated February 7, 1997, ¶¶ 4, 5, and 6 (Exhibit 8 to Trustee's motion to dismiss and for sanctions) [P. 16].

*CONCLUSIONS OF LAW*

■ There is no doubt, based upon the record in this case, that the debtor is the sponsor of the instant lawsuit, as its true beneficiary and real party in interest. As the wife of the debtor, the plaintiff is an insider who shares with him an identity of interest. 11 U.S.C. § 101(31). As an insider, the plaintiff's close relationship with the debtor subjects her conduct to greater scrutiny than those dealing with the debtor at arm's length.

The plaintiff's claim of ownership in JFC as a tenant by the entireties is but the latest in a long line of legal maneuvers employed by the debtor and others under his control and direction to thwart the IRS and frustrate the jurisdiction of this Court. As Allnutt's spouse, the plaintiff was on notice that he had filed bankruptcy, and that the Chapter 11 trustee was liquidating estate property in which she later claimed an interest.

The state court complaint was an implicit attack upon both the jurisdiction of the bankruptcy court to validly sell the debtor's property and the Chapter 11 trustee, who conducted the sale and who was not joined as a party.

*THE BANKRUPTCY COURT HAS SUBJECT MATTER JURISDICTION OVER THE INSTANT ADVERSARY PROCEEDING*

■ This Court has subject matter jurisdiction over the instant suit because its outcome could have a substantial impact upon the administration of the Allnutt bankruptcy case by nullifying a court-approved sale of estate assets and by revesting those assets in the debtor in contravention of the order of confirmation. Sales of property are core proceedings arising under Title 11, as defined in 28 U.S.C. § 157(b) [12], over which this

**12.** Section 157(b) of Title 28 of the U.S.Code provides as follows:

> (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under Section 158 of this title.
> (2) Core proceedings include, but are not limited to—
> (A) matters concerning the administration of the estate;
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
> (C) counterclaims by the estate against persons filing claims against the estate;
> (D) orders in respect to obtaining credit;

> (E) orders to turn over property of the estate;
> (F) proceedings to determine, avoid, or recover preferences;
> (G) motions to terminate, annul, or modify the automatic stay;
> (H) proceedings to determine, avoid, or recover fraudulent conveyances;
> (I) determinations as to the dischargeability of particular debts;
> (J) objections to discharges;
> (K) determinations of the validity, extent, or priority of liens;
> (L) confirmations of plans;
> (M) orders approving the use or lease of property, including the use of cash collateral;
> (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
> *Id.*

Court has jurisdiction pursuant to 28 U.S.C. § 1334(a) [13].

▮ Core proceedings are those matters necessarily incidental to a bankruptcy case that affect the restructuring of debtor-creditor relations and the liquidation of estate assets. *Edgcomb Metals Co. v. Eastmet Corp.*, 89 B.R. 546, 548 (D.Md.1988). This action is a core proceeding because it calls into question the power of the bankruptcy court to conduct a core proceeding, namely a sale of estate property. Allegations of impropriety in the conduct of bankruptcy sales are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

▮ Although the instant suit was filed as a claim under state law for conversion and detinue in a state court by an insider of a debtor *while the bankruptcy case is still open*, in reality the suit is a challenge to a Chapter 11 trustee's bankruptcy sale approved by the bankruptcy court. A proceeding is not deemed to be "non-core" merely because its outcome may be influenced by state law. 28 U.S.C. § 157(b)(3); *Arnold Print Works v. Apkin (In re Arnold Print Works)*, 815 F.2d 165, 169 (1st Cir.1987). Assuming that the plaintiff's complaint were justified and she were found to be entitled to relief, the effect would be to void the sale conducted by the Chapter 11 trustee under the aegis of the bankruptcy court.

The power of this Court to consider such allegations is so essential to its ability to administer assets of bankruptcy estates that such power is beyond question. It is irrelevant to the exercise of this power that the property which is the subject of the suit has been sold, because the object of the suit is the return of that property to the possession and control of the debtor or the recovery of damages for its deprivation during the pendency of the bankruptcy case. Part of the determination of whether the bankruptcy court has subject matter jurisdiction is whether the court has the power to grant the requested relief within its core functions. Strictly for purposes of the jurisdictional inquiry, the Court assumes that the plaintiff would be entitled to obtain the requested relief, exclusive of any procedural or substantive defenses to the suit. Because the instant suit concerns the approval of a sale of estate assets, and assuming the plaintiff's allegations to be well-taken and the requested relief to be justified, the bankruptcy court has subject matter jurisdiction over the instant controversy because it has the power to void the sale. In other words, assuming that the instant suit alleged sufficient grounds to entitle the plaintiff to have the sale voided, it is this Court, the bankruptcy court which approved the sale in the first place, that has

---

13. Section 1334 of Title 28 of the U.S.Code provides:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
> (c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to

> which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain or not to abstain made under this subsection is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.
> (d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

*Id.*

the theoretical power to set the sale aside or afford the plaintiff other ancillary relief. If the debtor is entitled to be put back in possession of property, it is this Court, which dispossessed him of that property, that has the theoretical power to restore the property to his possession, while the bankruptcy case remains open.

Because the plaintiff would have no cause of action except for the bankruptcy sale, the present suit is one "arising in" the jurisdiction of the bankruptcy court. *Simmons v. Johnson, Curney & Fields, P.C. (In re Simmons)*, 205 B.R. 834, 840 (Bankr. W.D.Tex.1997); *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins, Inc.)*, 86 F.3d 364 (4th Cir.), cert. denied, — U.S. ——, 117 S.Ct. 483, 136 L.Ed.2d 377 (1996). "Matters 'arising in' Title 11 'are those not based on any rights expressly created in Title 11, but those which nevertheless would have no existence outside the bankruptcy.' " *Celotex Corp. v. AIU Ins. Co. (In Matter of Celotex Corp.)*, 152 B.R. 667, 672, fn. 7 (Bankr.M.D.Fla.1993), *quoting Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987).

Although none of the parties to the suit is a debtor, the plaintiff is an insider who, as the debtor's non-filing spouse, is claiming ownership in the debtor's property as his co-tenant in privity with the debtor. *Because the plaintiff and Allnutt are still husband and wife, her recovery of damages and/or property from the defendants would have the consequence of restoring the debtor to possession of money and assets of the bankruptcy estate as a tenant by entireties with the plaintiff.* Assuming a favorable verdict for the plaintiff, the outcome of the suit would undo the work of the trustee in liquidating property of the bankruptcy estate and would return that property to the debtor's possession, as if a bankruptcy case had never been filed, as if no bankruptcy trustee had ever been appointed to take control of the assets, as if U.S. District Judge Smalkin had not decided that the assets of JFC were subject to the claims of the IRS. *Cf. In the Matter of Betty A. Linton*, 136 F.3d 544 (7th Cir.1998).

The plaintiff's counsel argued that this Court no longer has subject matter jurisdiction over this controversy because the *res* in which the plaintiff is asserting an interest is no longer property of the bankruptcy estate. This Court disagrees. The cases that stand for the proposition that a bankruptcy court has no subject matter jurisdiction to decide questions of title to property after a bankruptcy sale do not apply to the instant case which concerns lawsuits brought by debtors and their agents against purchasers of estate property during the pendency of the case. *See for example In the Matter of Edwards*, 962 F.2d 641 (7th Cir.1992) (suit by second mortgagee against bona fide purchaser to determine priority of lien); *Wisconsin Department of Industry, Labor and Human Relations v. Marine Bank Monroe (Matter of Kubly)*, 818 F.2d 643 (7th Cir.1987) (suit to determine priority of liens on proceeds of assets sold out of bankruptcy estate); *Elscint, Inc. v. First Wisconsin Financial Corp. (In the Matter of Xonics, Inc.)*, 813 F.2d 127 (7th Cir.1987) (unrelated dispute between two creditors to property that formerly belonged to debtor); *Cook v. Griffin*, 102 B.R. 875 (N.D.Ga.1989) (title dispute between nondebtors over real property alleged to be owned by debtors); *Miller v. Kemira, Inc. (In Matter of Lemco Gypsum, Inc.)*, 910 F.2d 784 (11th Cir.1990) (action for contempt brought by debtor's former landlord against purchaser of debtor's property); and *Blaustein v. Aiello*, 229 Md. 131, 182 A.2d 353 (1962), *cert. denied*, 371 U.S. 233, 83 S.Ct. 326, 9 L.Ed.2d 494 (1963) (objections to foreclosure sale filed by purchaser of property from bankruptcy trustee). These cases are distinguishable from the case at bar, where the subject matter of this suit is the right of a debtor and his insider, who have been dispossessed of property by bankruptcy court orders, to contest those orders by means of vexatious litigation brought in a nonbankruptcy forum during the pendency of the bankruptcy case in the absence of bankruptcy court approval. The instant case is also distinguishable because here federal bankruptcy law will provide the rule of decision.

*THE PLAINTIFF'S MOTIONS TO REMAND WILL BE DENIED*

The state court in which the complaint was filed did not have subject matter

**886**

jurisdiction to set aside the bankruptcy court-approved sale, based upon facts set forth on the face of the complaint. The plaintiff's rights to such property could only be derived from a properly-claimed exemption filed in the bankruptcy case, followed by an objection to the trustee's sale pursuant to 11 U.S.C. § 363. As cogently stated by Judge Keir of this Court:

In Maryland, "conversion has been generally defined as the wrongful exercise of dominion by one person over the personal property of another." *Kalb v. Vega,* 56 Md.App. 653, 665, 468 A.2d 676, 683 (1983). In order to successfully plead conversion, it must be shown that the appropriation of property was unauthorized or without the consent of the owner. *Matter of Burdick,* 65 B.R. 105, 108 (Bankr.N.D.Ind.1986). An act which would otherwise constitute a conversion may be precluded from having that effect by a plaintiff's consent to the act. *Restatement (Second) of Torts* § 252 (1965). Nonconsent to the possession and disposition of the property by the Defendant are therefore indispensable. If an owner expressly or impliedly assents to, or ratifies the taking, use, or disposition of the property, the owner cannot recover for conversion. *Rose Brothers, Inc. v. City of Alva,* 356 P.2d 1083, 1085 (Okla.1960).

*NationsBank of D.C., N.A. v. Blier (In re Creative Goldsmiths of Washington, D.C.),* 178 B.R. 87, 93 (Bankr.D.Md.1995).

The plaintiff's motions to remand will be denied because the instant complaint filed in the Circuit Court for Howard County was properly removed to the U.S. Bankruptcy Court for the District of Maryland. 28 U.S.C. § 1452(a)[14]. In the case of *Allnutt v. Wilcoxson,* 105 F.3d 646, 1997 WL 9762 (4th Cir.1997), in which Allnutt was sanctioned for harassing a purchaser of the so-called race car assets by haling him into a state court for a deposition supposedly to preserve testimony in advance of the filing of a suit challeng-

ing the sale, the Fourth Circuit upheld the removal jurisdiction of the bankruptcy court in these words:

Allnutt's subpoena for a deposition to perpetuate evidence was to obtain evidence for use in filing an action to challenge the bankruptcy court's sale of the race car assets. Challenges to the propriety of sales of assets of the bankruptcy estate are core bankruptcy proceedings pursuant to 28 U.S.C. § 157(b)(2)(A) (1994). *See In re Elegant Equine, Inc.,* 155 B.R. 189, 191 (Bankr.D.Ill.1993); *In re American Solar King,* 142 B.R. 772 (Bankr.W.D.Tex.1992). Because the bankruptcy court would have jurisdiction over the anticipated underlying action, the subpoena action to perpetuate testimony was properly removed to the bankruptcy court. *See* Bank.Proc. Rule 9027.

*Id.*

Although artfully pleaded to avoid the appearance of coming within the subject matter jurisdiction of the bankruptcy court, the instant complaint on its face attacked the bankruptcy court-approved sale of the debtor's property in which the plaintiff untimely asserted an interest, and therefore was properly removed. Remand was properly denied because this Court is the only tribunal having original, exclusive jurisdiction over the subject matter of the complaint.

On February 24, 1998, while this opinion was nearing completion, the Supreme Court handed down a decision in the case of *Rivet v. Regions Bank of Louisiana,* —— U.S. ——, 118 S.Ct. 921, 139 L.Ed.2d 912, which reversed 108 F.3d 576 (5th Cir.1997). The decision held that where removal on grounds of a federal question was premised upon a prior federal judgment entered by a bankruptcy court that precluded the state law claim, the defensive plea of claim preclusion did not provide a proper basis for removing a state lawsuit to a U.S. district court. In-

---

**14.** Section 1452(a) provides:

§ 1452. Removal of claims related to bankruptcy cases

(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce

such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a).

stead, the Court stated, "The defense of claim preclusion . . . is properly made in the state proceeding, subject to this Court's ultimate review." *Rivet,* —— U.S. at ——, 118 S.Ct. 921, 923, 139 L.Ed.2d 912. The opinion supports the decision in the instant case to uphold removal and deny motion to remand.

At the time the suit was removed in *Rivet,* the bankruptcy case in which the preclusive orders had been issued was closed. The suit was removed to a U.S. district court pursuant to 28 U.S.C. § 1441(a), the general federal removal statute, rather than the bankruptcy removal statute, 28 U.S.C. § 1452(a). *Cf. Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). Therefore, *Rivet* did not concern the jurisdiction of the state court being preempted by the subject matter jurisdiction of a bankruptcy court.

The decision in *Rivet* turned upon claim *preclusion,* rather than claim *preemption,* as in the instant case, where this Court has held that the subject matter jurisdiction conferred upon the bankruptcy court by federal law completely preempted the state court from entertaining the instant case. While the application of the doctrine of claim preclusion may determine the outcome of the instant case, the Court finds that federal jurisdiction, specifically conferred upon this Court by the Bankruptcy Code and the Judicial Code, completely preempted the jurisdiction of the state court so that removal of the plaintiff's claim to the bankruptcy court was proper. The language of the Supreme Court in *Rivet* as its relates to the instant case confirms this conclusion:

> We have long held that "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *see also Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). A defense is not part of a plaintiff's properly pleaded statement of his or her claim. *See Metropolitan Life*

*Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Gully v. First Nat. Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) ("To bring a case within the [federal-question removal] statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action."). Thus, "a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense. is the only question truly at issue in the case." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for. Southern Cal.,* 463 U.S. 1, 14, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983).

Allied as an "independent corollary" to the well-pleaded complaint rule is the further principle that "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Id.,* at 22, 103 S.Ct., at 2853. If a court concludes that a plaintiff has "artfully pleaded claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim. *See Metropolitan Life Ins. Co.,* 481 U.S., at 65–66, 107 S.Ct., at 1547–48 (upholding removal based on the preemptive effect of § 502(a)(1)(B) of the Employment Retirement Income Security Act); *Avco Corp. v. Machinists,* 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968)(upholding removal based on the preemptive effect of § 301 of the Labor Management Relations Act). Although federal preemption is ordinarily a defense, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar,* 482 U.S., at 393, 107 S.Ct., at 2430.

*Rivet v. Regions Bank of Louisiana,* —— U.S., at ——, 118 S.Ct., at 924–25.

## THE TRUSTEE'S MOTION TO INTERVENE WILL BE GRANTED

■ The trustee will be permitted to intervene because the trustee is a necessary party as the representative of the debtor's estate. *Heyman v. M.L. Marketing Co.,* 116 F.3d 91, 94–95 (4th Cir.1997). The bankruptcy estate has an interest in these proceedings because the outcome could nullify the sale of substantially all of the assets and revest them in the debtor's possession, thereby nullifying the order confirming the trustee's plan of liquidation. The trustee's joinder on behalf of the estate is necessary because this suit challenges the propriety of the trustee's conduct in the administration of the bankruptcy case that the trustee should defend on the estate's behalf.

■ No suit may be brought in a state court against a trustee or counsel to a debtor in possession for alleged misconduct in liquidating assets of a bankruptcy estate without leave of the bankruptcy court. *Hallock v. Key Federal Savings Bank (In re Silver Oak Homes, Ltd.),* 167 B.R. 389, 394–95 (Bankr. D.Md.1994). "It is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court." *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir.1993), citing the doctrine of *Barton v. Barbour,* 104 U.S. 126, 26 L.Ed. 672 (1881). By failing to join Mark J. Friedman, the Chapter 11 trustee, a necessary party to the state court action,[15] the plaintiff attempted to circumvent the procedure of obtaining leave of court to file the state court suit.[16]

Most recently, a decision in the case of *In the Matter of Betty A. Linton,* 136 F.3d 544 (7th Cir.1998), decided February 18, 1998,

held that the doctrine of *Barton v. Barbour* prevents a suit against a trustee without leave of court *after the bankruptcy case has been closed.* Speaking on behalf of the Seventh Circuit, Chief Judge Posner wrote:

At stake in the present case, however, is a concern ... with the integrity of the bankruptcy jurisdiction. If debtors, creditors, defendants in adversary proceedings, and other parties to a bankruptcy proceeding could sue the trustee in state court for damages arising out of the conduct of the proceeding, that court would have the practical power to turn bankruptcy losers into winners, and vice versa. A creditor who had gotten nothing in the bankruptcy proceeding might sue the trustee for negligence in failing to maximize the assets available to creditors, or to the particular creditor. A debtor who had failed to obtain a discharge might through a suit against the trustee obtain the funds necessary to pay the debt that had not been discharged.

Of course principles of *res judicata* and the good faith of state courts would head off the worst consequences of the kind of divided jurisdiction over bankruptcy matters that we have just described. But a simpler and more secure protection is to require the person wanting to bring a suit in state court against a trustee in bankruptcy to obtain leave to do so from the bankruptcy court. We can draw an analogy between federal officers and bankruptcy trustees, and hence between the federal officers' removal statute, 28 U.S.C. § 1442, see *Arizona v. Manypenny,* 451 U.S. 232, 241–42, 101 S.Ct. 1657, 1664–65, 68 L.Ed.2d 58 (1981), and the judge-made doctrine requiring leave of the bankruptcy court to sue the trustee. The latter has actually a more secure constitutional pedigree, because it responds to the concern

---

**15.** Even though Mr. Friedman was an operating trustee, the doctrine of *Barton v. Barbour* has been held to be applicable to a cause of action that relates to the trustee's conduct in liquidating assets of a bankruptcy estate. *Missouri Dept. Of Nat. Resources v. Valley Steel Products Co., Inc. (In re Valley Steel Products Co., Inc.),* 157 B.R. 442, 448 (Bankr.E.D.Mo.1993); *Mangun v. Bartlett (In re Balboa Improvements, Ltd.),* 99 B.R. 966, 970 (9th Cir. BAP 1989).

**16.** The plaintiff selected her targets with care, failing to join Mr. Mangione, who is now her husband's employer, and Mr. Friedman, the trustee, whose joinder would have raised a red flag indicating that the complaint should have been filed in the bankruptcy court.

that motivated the framers of the Constitution in authorizing Congress to enact uniform, nationwide bankruptcy laws. Art. I, § 8, cl. 4—concern that states might favor debtors, or creditors, unduly. Joseph Story, *Commentaries on the Constitution of the United States* § 540, pp. 386–87 (1833). 136 F.3d at 546.

*THE INSTANT COMPLAINT WAS PROCEDURALLY IMPROPER*

 During the administration of a bankruptcy case, it is not proper for an insider to keep silent regarding her co-ownership of property of the debtor that was being administered by his trustee. The concealment of the plaintiff's interest from the trustee and the bankruptcy court and her suit against the purchasers of assets in a state court after the consummation of the sale without seeking approval of the bankruptcy court was manifestly improper. Instead, the plaintiff should have sought an order from the U.S. bankruptcy court before the sale, pursuant to Section 363(e) of the Bankruptcy Code, which provides, *inter alia:*

Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

*Id.* Section 363 was the mechanism pursuant to which this Court approved the sale of the JFC assets to the defendants. Despite protections to a co-owner of property subject to sale in a bankruptcy estate found in Section 363,[17] the plaintiff did not raise the issue of her alleged entireties ownership in the bankruptcy court or attack the sale in this Court, either before or after it took place.[18] "[A]fter the time for appeal had lapsed, the order could not be attacked in a new lawsuit brought by a party to the sale proceeding or by a successor to that party or by anyone else so far identified with such a party as to be classified as being in privity with him; such a suit would be barred by *res judicata.* The only other remedy would be a motion to vacate the judgment under Rule 60(b)." *Gekas v. Pipin (In the Matter of Met–L–Wood Corp.),* 861 F.2d 1012, 1016 (7th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989).

 The burden was upon the debtor and those claiming derivative rights to property of the estate through him to assert claims to that property against the right of the trustee to administer those assets during the pendency of the bankruptcy case. Section 363(h) requires that a trustee who wishes to sell a co-owner's interest in property of the estate file an adversary proceeding against the co-owner prior to the sale of the co-owner's interest. 11 U.S.C. § 363(h). However, in the absence of knowledge of the existence by the trustee of a co-owner's claim, the trustee need not initiate a declaratory judgment action in the bankruptcy court to determine the nature of the debtor's ownership interest in property of the estate. Any rights the plaintiff may have had to claim an interest in property of the bankruptcy estate as the debtor's spouse were cut off when the property was sold by the Chapter 11 trustee after the debtor failed to exempt the property as that held by tenants by the entireties, and/or when the plaintiff, with

---

17. Section 363(h) provides that when four conditions are met, "the trustee may sell both the estate's interest ... and the interest of any co-owner in property in which the debtor had ... an undivided interest as ... tenant by the entirety." Section 363(i) provides that prior to the consummation of a sale of property, a debtor's spouse, who is a tenant by the entireties, "may purchase such property at the price at which such sale is to be consummated[;]" Section 363(j) provides that after the sale of property held in a tenancy by the entireties, "the trustee shall distribute to the debtor's spouse ... and to the estate, the proceeds of such sale ... according to the interests of such spouse ..." 11 U.S.C. § 363(h).

18. Section 363(m) provides that "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal." 11 U.S.C. § 363(m).

full knowledge of the sale, failed to object to it. *Veltman v. Whetzal*, 93 F.3d 517, 522 (8th Cir.1996). The Seventh Circuit went even farther, stating in *Gekas v. Pipin (In the Matter of Met–L–Wood Corp.)*, 861 F.2d 1012, 1017 (7th Cir.1988):

> A proceeding under section 363 is an *in rem* proceeding. It transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding.

*Id.*

The sale in this case was properly conducted by the Chapter 11 trustee. The sale was properly approved by order of this Court and conveyed good title to the property that was conveyed. The order approving the sale determined the buyers to be *bona fide* purchasers.

■ A bankruptcy court has the powers of a court of equity. *U.S. v. Energy Resources Co.*, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). Section 105(a) of the Bankruptcy Code provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Id.* During the pendency of a Chapter 11 proceeding, and in aid of its jurisdiction, the bankruptcy court having been clothed with the exclusive jurisdiction to deal with property of a Chapter 11 estate, has the inherent power to enjoin debtors, insiders and their agents, including attorneys, from attacking sales of estate property in State courts, to prevent a debtor from regaining title to estate property by circumventing and negating the bankruptcy process, to enforce its valid orders, and to prevent the debtor and the debtor's agents from injuring third parties by misconduct which is determined to be both fraudulent and vexatious. *Cf. Celotex Corp. v. Edwards*, 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); *WBQ Partnership v. Commonwealth of Virginia Department Of Medical Assistance Services (In re WBQ Partnership)*, 189 B.R. 97 (Bankr. E.D.Va.1995); *In re G.S.F. Corp.*, 938 F.2d 1467 (1st Cir.1991); *Menard–Sanford v. Mabey (In re A.H. Robins)*, 880 F.2d 694 (4th Cir.), *cert. denied*, 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989); *MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 837 F.2d 89 (2d Cir.), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988).

■ A permanent injunction will issue against the debtor, his insiders and agents, including his, her, or their attorneys, from contesting the validity of sales of property of the bankruptcy estate by the Chapter 11 trustee, subject to further severe sanctions.[19]

---

19. The Chapter 11 trustee's confirmed plan [P. 489] contained a reservation of jurisdiction in this Court for these and other purposes, as follows:

11.1 The Court will retain jurisdiction after the Confirmation Date of the Plan for the following:

(a) Except as to the Allowed Secured Tax Claims, the allowance and classification of any Claim, the estimation of any Claim, the re-examination of any Claim which has been allowed for purposes of voting, and the determination of any objections that may be or may have been filed to Claims (the failure by the Trustee to object to, or to examine for the purposes of voting, any Claim as of the Confirmation Date shall not be deemed a waiver of the trustee's right to object to, or to reexamine, the Claim in whole or in part after the Confirmation Date);

(b) The determination of all questions and disputes regarding title to assets of the Estate, approval of distributions and payments under the Plan and determination of all causes of action, controversies, disputes, conflicts or Claims involving the Estate or the Trustee including, but not limited to, all litigation or contested matters pending before the Court on the Confirmation Date, any litigation or contested matters filed subsequent to the Confirmation Date, and any right of the Estate to recover assets pursuant to the provisions of the Bankruptcy Code;

(c) The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Plan or the Confirmation order as may be necessary to carry out the purposes and intent of the Plan;

(d) The modification of the Plan after the Confirmation Date pursuant to applicable Bankruptcy Rules and the Bankruptcy Code;

(e) The enforcement, implementation and interpretation of the terms of the Plan and the resolution of any objections which may be filed or issues which may arise with respect to any actions taken or proposed to be taken pursuant to the provisions of the Plan;

(f) The entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Estate and the trustee under the

## THIS COURT WILL TREAT THE DEFENDANTS' MOTIONS TO DISMISS AS MOTIONS FOR SUMMARY JUDGMENT AND WILL GRANT THEM

Pursuant to Federal Rule of Civil Procedure 12(b), made applicable to the instant adversary proceeding by Bankruptcy Rule 7012(b), the defendants' motions to dismiss shall be treated as motions for summary judgment. The parties to this action have presented documents outside the pleadings that have not been excluded by this Court. When matters outside the pleadings are "presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56 ..." Fed.R.Civ.P. 12(b); *Finley Lines Jt. Protect. Bd. v. Norfolk So. Corp.*, 109 F.3d 993, 995 (4th Cir. 1997).

Motions for summary judgment are governed by Bankruptcy Rule 7056, which makes Fed.R.Civ.P. 56 applicable to adversary proceedings. The standard for granting summary judgment is as follows:

> Summary judgments are appropriate in those cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).... However, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

*Miller v. F.D.I.C.*, 906 F.2d 972, 973–74 (4th Cir.1990).

The defendants are entitled to summary judgment without regard to the inconsistent positions on the record that the plaintiff and Allnutt have taken regarding title to the property. He has always disavowed owning the business; she now claims that the business was acquired during her marriage to the debtor, and that she jointly owned it with him as tenants by the entireties. The plaintiff has failed to produce any persuasive evidence from which such an inference could be drawn. In order to find that the plaintiff was the owner of an interest in JFC as a tenant by the entireties, it is axiomatic that Allnutt, the plaintiff's spouse, must also hold an ownership interest therein as a tenant by the entireties.

■■■ The plaintiff has never contested the decision of the U.S. District Court which held that the debtor was the sole owner of JFC, nor decisions of this Court disposing of JFC as property of Allnutt's bankruptcy estate. Collateral estoppel is properly applicable to a bankruptcy proceeding to prevent relitigation of issues actually and necessarily resolved in a prior nonbankruptcy proceeding. *Grogan v. Garner*, 498 U.S. 279, 284–85, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991).

■■■ The plaintiff claims to have been the owner of bankruptcy estate property as "a tenant by the entireties." However, one spouse cannot be the joint owner of property by the entireties without the other spouse (in this case, the debtor) being the co-owner. In Maryland, the transfer of property to a husband and wife gives rise to a presumption that the property is held as tenants by the entireties unless a contrary intention is indicated. *Columbian Carbon Co. v. Kight*, 207 Md. 203, 114 A.2d 28 (1955); *Kolker v. Gorn*, 193 Md. 391, 67 A.2d 258 (1949); *Marburg v. Cole*, 49 Md. 402 (1878).

■■■ Maryland law retains the traditional form of the tenancy by the entireties estate. "By common law, a conveyance to husband and wife does not make them joint tenants, nor are they tenants in common; they are in the contemplation of the law but one person, and hence they take, not by moieties, but by the entirety." *Beall v.*

---

Plan and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Court may deem necessary;
 (g) The allowance of Professional Claims;
 (h) Any claim against or related to the trustee or the Trustee's Professionals; and

 (i) The entry of an order concluding and terminating this bankruptcy case.
*Id.*

*Beall,* 291 Md. 224, 234, 434 A.2d 1015, 1021 (1981). The Court of Appeals of Maryland has described an estate held as tenants by the entireties estate as follows:

> [T]he tenancy by which husband and wife at common law hold land conveyed or devised to them by a single instrument which does not require them to hold it by another character of tenancy. The title of both husband and wife arises out of the instrument, whether deed, devise or gift, by virtue of which they become seized of the estate. A tenancy by the entirety cannot be created unless the four essential common law unities, namely, interest, title, time and possession, co-exist.

*Bruce v. Dyer,* 309 Md. 421, 427, 524 A.2d 777, 780 (1987) (*quoting* 2 H. Tiffany, *The Law of Real Property* § 430 (B. Jones, 3d ed. 1939 & 1987 Supp.)). "Neither [tenant] can alienate [the tenancy by the entireties property] without the consent of the other, and the survivor takes the whole." *Beall,* 291 Md. at 234, 434 A.2d at 1021 (*citing Marburg v. Cole,* 49 Md. 402 (1878)).

■ Mr. Mulligan's argument that this Court has no subject matter jurisdiction in this case proceeds from the false assumption that the plaintiff's claim to an ownership interest in the real property has already been established under state law, which is not true. The record title to all of the property of JFC was in the names of the three entities created by the debtor to thwart the tax collector, namely Sovereign Equipment Association, Constitution Leasing Association, and Ellicott Building Association. These were the entities that Judge Smalkin decided were mere shams to camouflage Allnutt's sole ownership. No evidence was produced to support the claim that the business assets were conveyed to the plaintiff and the debtor as a marital unit. The plaintiff did not present any evidence or documents tending to establish any of the four unities. Therefore, because the four essential common law unities, namely, interest, title, time and possession were not demonstrated to co-exist, the plaintiff's claim that she and Allnutt owned the assets of JFC as tenants by the entireties must fail.

■ While questions of the ownership of property involved in a bankruptcy estate are determined by state law, whether property in which the debtor has an interest is property of the bankruptcy estate is a federal question. *Barnhill v. Johnson,* 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39, 46 (1992); *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136, 141–42 (1979); *Board of Trade of Chicago v. Johnson,* 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924).

■ The filing of the bankruptcy petition in this case created a bankruptcy estate that included "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). However, a debtor may exempt certain property from estate administration to obtain a fresh start. *Cheeseman v. Nachman, (In re Cheeseman),* 656 F.2d 60, 63 (4th Cir.1981) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 126 (1977), reprinted in U.S .Code Cong. & Ad. News 5963, 6087 (1978)). *See also* 11 U.S.C. § 522 (setting forth federal exemption law). Maryland has "opted out" of the federal exemption scheme. *See* 11 U.S.C. § 522(b)(1); Md. Cts. & Jud.Proc. Code Ann. § 11–504(g); *In re Ginn,* 186 B.R. 898 (Bankr.D.Md.1995). The failure of both the debtor and the plaintiff to claim exemptions of so-called "entireties property" from administration by the Chapter 11 trustee waived their right to any such exemptions. See 11 U.S.C. § 522(*l*); 4 *Collier on Bankruptcy* 522.07 (15th ed.1997). The trustee was therefore within his rights to sell the property of JFC after notice pursuant to order of the bankruptcy court. § 363(g), (h) and (i). The failure of a co-owner to object to a trustee's notice of sale has been held to authorize a sale free and clear of all liens, encumbrances and interests, such as the interest claimed here by the plaintiff. *Veltman v. Whetzal,* 93 F.3d 517 (8th Cir.1996). Once the sale became final, by the failure to file a timely appeal or to obtain a stay pending appeal, the order approving the sale is no longer reviewable, pursuant to 11 U.S.C. § 363(m). *Veltman,* 93 F.3d at 521, *citing In re CGI Indus., Inc.,* 27 F.3d 296 (7th Cir. 1994).

Citing *In re Ford,* 3 B.R. 559 (Bankr. D.Md.1980), *aff'd. sub. nom. Greenblatt v. Ford,* 638 F.2d 14 (4th Cir.1981), the plaintiff argued that because only the debtor's interest in entireties property became property of the estate, the plaintiff's interest in entireties property could not be sold by the trustee. The problem with that argument is that the debtor did not claim that he owned the property, either solely in his own right, or jointly with the plaintiff. All of the property that was later administered by the trustee came into the estate when the case was filed, as confirmed after the fact by the decision of the U.S. District Court [Smalkin, J.]

 This Court need not rely upon the voluminous documents attached to the pleadings that support the finding that JFC was a sole proprietorship owned solely by the debtor.[20] Mr. and Mrs. Allnutt filed joint income tax returns that identified JFC as a sole proprietorship owned solely by Mr. Allnutt. Therefore, the plaintiff is estopped from now characterizing the business as jointly-held. *See Robb–Fulton v. Robb (In re Robb),* 23 F.3d 895 (4th Cir.1994) (taxpayer who deducted payments as alimony on his income tax returns was estopped from later claiming them as dischargeable support payments after he filed his bankruptcy petition).

 The U.S. District Court [Smalkin, J.] conclusively determined that Allnutt was the sole owner of JFC. Collateral estoppel prevents the plaintiff, who is necessarily in privity with Allnutt, from later challenging that determination. *Harnett v. Billman,* 800 F.2d 1308 (4th Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987); *Reddick v. State,* 213 Md. 18, 30, 130 A.2d 762, 768, *cert. denied,* 355 U.S. 832, 78 S.Ct. 50, 2 L.Ed.2d 44 (1957); *Lichtenberg v. Sachs,* 200 Md. 145, 159, 88 A.2d 450, 456 (1952); *Ugast v. LaFontaine,* 189 Md. 227, 232–33, 55 A.2d 705, 708 (1947).

This Court's determination that the plaintiff may not now assert a claim to the assets of JFC is not only consistent with Judge Smalkin's decision, but is required by the preclusive effect of the order approving the sale pursuant to Section 363 of the Bankruptcy Code, *Matter of Edwards,* 962 F.2d 641 (7th Cir.1992); and by reason of *res judicata,* collateral estoppel, equitable estoppel and waiver effected by the Chapter 11 trustee's confirmed plan of liquidation. *First Union Commercial Corp. v. Nelson (In re Varat Enterprises, Inc.),* 81 F.3d 1310, 1315 (4th Cir.1996), citing *Stoll v. Gottlieb,* 305 U.S. 165, 170–71, 59 S.Ct. 134, 136–37, 83 L.Ed. 104 (1938).

The instant cause of action is so transparently sham and fraudulent that no reasonable finder of fact could determine there to be a genuine dispute as to a material fact. The plaintiff's suit is premised upon a claim that she and the debtor kept secret between themselves during the pendency of the bankruptcy case. To give legal effect to the clandestine claim of a debtor and those in privity with him against property of a bankruptcy estate that a trustee has already administered for the benefit of creditors is to damage the credibility of the judicial process in general and the bankruptcy process in particular. The highly prejudicial impact on the liquidation of the bankruptcy estate caused by the plaintiff's claim, raised as it was at such a late date, renders highly sus-

---

**20.** The joint tax returns of the plaintiff and the debtor supplementing the pleadings reported Allnutt as self-employed. The tax returns also reported Allnutt's earnings from the sole proprietorship. Despite a variety of trade names, the business was a sole proprietorship owned by Allnutt. The promissory notes supplied by the plaintiff reinforce the conclusion that JFC was owned by Allnutt because his signature was the only one bearing the description of "owner." The first note that evidenced the initial loan that started what became JFC, dated August 31, 1967, was co-signed by the plaintiff, together with the debtor's parents, Smith White Allnutt and Mar-

garet G. Allnutt. No differentiation between the co-signers was made as to the form by which the proceeds of the loan were to be held.

In his sworn affidavit that was appended to pleadings submitted in litigation before the U.S. District Court, the debtor acknowledged that he operated the excavating company as a sole proprietorship for a time before he allegedly "sold" it to his sons. The sworn affidavit of his son, Christopher S. Allnutt, confirmed that he and his brother purchased *their father's business.* No mention was ever made by Allnutt family members of any interest in JFC held by the plaintiff.

pect the timing of the instant complaint.[21] The plaintiff's suit was frivolous and the defendants are entitled to judgment as a matter of law.

For all these reasons, the instant complaint must be dismissed, but not before the Court has considered the imposition of sanctions upon those who perpetrated this nefarious scheme.

## THE IMPOSITION OF SANCTIONS UPON THE PLAINTIFF AND HER ATTORNEY

The plaintiff and her attorney have continued the debtor's efforts to obstruct the orderly administration of the bankruptcy estate by repeated and unwarranted lawsuits filed in the state court against *bona fide* purchasers of bankruptcy estate property. Principles of *res judicata* and collateral estoppel prevent the debtor and those acting on his behalf from attacking orders of this Court outside the usual appellate procedures during the pendency of the bankruptcy case. However, the plaintiff disregarded those strictures by filing this frivolous and fraudulent claim in a non-bankruptcy forum that did not enjoy a knowledge of the history of the bankruptcy case. Mrs. Allnutt and Mr. Mulligan knew that they could not prevail in the bankruptcy court on her tenancy-by-the-entireties theory in light of the past admonitions of this Court. Instead, they filed this groundless suit in the state court and prayed a trial by jury.

The plaintiff's complaint exhibits a blatant disregard for the jurisdiction and authority of the federal courts, including the U.S. bankruptcy court, in which her husband, the debtor, voluntarily sought relief from debt. Instead of pursuing remedies provided by the Bankruptcy Code to protect her alleged interests in the JFC assets, the plaintiff filed a suit in state court without leave of this Court. The bankruptcy court is clothed with the authority to stop such antics in the exercise of its jurisdiction to liquidate property of the estate and to bring the administration of the bankruptcy case to a proper conclusion.

This is the second frivolous lawsuit brought by the debtor's spouse, *an insider*, in which innocent parties have been haled into court to respond to groundless claims. In advancing the discredited tenancy-by-the-entireties theory for the second time and attempting to side-step the effects of a sale approved by this Court on an inapplicable theory of law, the plaintiff and her attorney have attacked the jurisdiction and authority of this Court. Such an attack is an affront to the dignity of the judicial system, in bad faith, vexatious and wanton.

The instant complaint was filed in the state court in bad faith and without substantial justification, for the improper purposes of unreasonably delaying the administration of the Chapter 11 case, to frustrate the jurisdiction of the bankruptcy court by preventing the orderly liquidation of the debtor's estate, overturn decisions of the U.S. bankruptcy court and the U.S. district court, and harass and damage innocent parties whose only offense was to purchase estate assets from the trustee.

After the suit was removed to the bankruptcy court, the plaintiff and her attorney continued to insist that they were justified in bringing this action. However, this Court finds that Mrs. Allnutt and Mr. Mulligan could not have held a reasonable basis for believing that the instant complaint was justified, or that it would generate serious issues of fact, particularly in light of their previous attempt to use the tenancy-by-the-entireties theory. Under these circumstances, the bad faith and lack of substantial justification evident in this second suit merit the imposition of sanctions against both the plaintiff and her attorney. Mr. Mulligan argued that this Court may not impose sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011.[22] This Court disagrees.

---

21. The claim of the IRS arose from the operation of the excavating business. Were the plaintiff indeed an owner of the assets by the entireties, the IRS would be a joint creditor and the proceeds of the sale could be used to satisfy the joint obligation. The plaintiff did not address this point or attempt to distinguish the instant case from *Sumy v. Schlossberg,* 777 F.2d 921 (4th Cir.1985).

22. Federal Rule of Bankruptcy Procedure 9011(a) provides:

(a) Signature. Every petition, pleading, motion and other paper served or filed in a case

■ While it is correct that Rule 11 sanctions may not be imposed for merely signing a complaint that is filed in a State court and is subsequently removed to a federal court, *Kirby v. Allegheny Beverage Corporation,* 811 F.2d 253 (4th Cir.1987), the maintenance of a frivolous and vexatious complaint after it was removed is a different story. The pleadings and other documents filed in this adversary proceeding on behalf of the plaintiff by her counsel after it was removed to this Court violated Federal Rule of Bankruptcy Procedure 9011. Mr. Mulligan filed various pleadings on the plaintiff's behalf after this adversary proceeding was removed to this Court, including motions to remand, objections to removal, oppositions to the motion to dismiss, and memoranda of law without substantial legal justification.

■ The plaintiff's counsel, Tracy E. Mulligan, departed from the objective standard of reasonableness, expressed in *Cabell v. Petty,* 810 F.2d 463, 466 (4th Cir.1987), that necessarily governs the proper conduct of an attorney. An inquiry into an attorney's conduct "focuses only on whether a reasonable attorney in like circumstances could believe his actions to be factually and legally justified." *Cabell,* 810 F.2d at 466. This standard explains the language of Federal Rule of Civil Procedure 11, which is identical to the language of Rule 9011 of the Federal Rules of Bankruptcy Procedure as to certification. This Court finds that Mr. Mulligan's arguments were not well-grounded in fact or in law.

It is not necessary to determine whether a reasonable inquiry into the court-approved sale would have led an attorney to the provisions of Section 363 of the Bankruptcy Code. The pleadings filed by Mr. Mulligan in this adversary proceeding on behalf of the plaintiff cited Section 363 and evidenced a familiarity with that and other Code provisions. The failure of the plaintiff and her attorney to obtain leave of this Court to file the state court action, and her failure to file a proper and timely challenge to the sale in the bankruptcy court is merely the latest attempt by Allnutt, his family and agents acting on his behalf to disrupt the ongoing proceedings in the bankruptcy court involving his bankruptcy estate.

■ A reasonable attorney in the circumstances of this case could not believe that this action, motivated as it was by malice, was factually or legally justified. Therefore, this Court finds that Mr. Mulligan committed willful and unethical misconduct in bringing this suit in the state court in the first place, and later by advocating its merits in the bankruptcy court, because in so doing, he advanced an unjust cause for lucre and malice. It was Mr. Mulligan who used his legal training to devise the fallacious entireties argument and who then employed sophistry, including the citation of authorities out of context, to support the claim.

■ As the represented party, the plaintiff is also subject to sanction. Fed. R.Bankr.P. 9011. "Quite often it is the client, not the attorney, who is better positioned to investigate the facts supporting a paper or pleading." *Business Guides, Inc. v. Chromatic Comm. Enterprises, Inc.,* 498 U.S. 533, 548, 111 S.Ct. 922, 932, 112 L.Ed.2d

under the Code on behalf of a party represented by an attorney, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state the party's address and telephone number. The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and

that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case. If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may be include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee. *Id.*

1140 (1991) (finding the same standard of reasonable inquiry into the facts and law before filing applies to represented parties).

The primary purpose of sanctions is to deter future litigation abuse. *Robeson Defense Comm. v. Britt (In re Kunstler)*, 914 F.2d 505, 522 (4th Cir.1990), *cert. denied*, 499 U.S. 969, 111 S.Ct. 1607, 113 L.Ed.2d 669 (1991). The other purposes of Rule 11 include punishing present litigation abuse, compensating the victims of the violation and streamlining court dockets. *Id.* The least severe sanction available that serves the purpose of the sanction should be imposed. *Cabell*, 810 F.2d at 466 (quoting Schwarzer, *Sanctions under the New Federal Rule 11, A Closer Look*, 104 F.R.D. 181, 201 (1985)). Costs and attorney's fees, as well as fines, dismissals, reprimands and admonitions are among the sanctions a court may impose.

In addition to the authority of Rule 9011, this Court has the inherent power to impose sanctions against the plaintiff and her attorney in order to protect and maintain the authority and dignity of the court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–6, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27, 46 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980).

Several factors enumerated by the Tenth Circuit in *White v. General Motors Corp.*, 908 F.2d 675 (10th Cir.1990), formed a part of the Fourth Circuit's analysis in *Kunstler*. In particular, the reasonableness of the opposing party's attorney's fees, minimum to deter, ability to pay and factors relating to the severity of the Rule 11 violation, should be considered when determining the amount of an appropriate sanction. *In re Kunstler*, 914 F.2d at 523. With this framework in mind, this Court makes the following determinations, which shall serve as the foundation upon which sanctions will be imposed.

Warnings by this Court to the plaintiff and her attorney before they dismissed the first suit were not sufficient to deter them from filing the instant suit. Mr. Mulligan was not deterred by this Court's public criticism of his conduct expressed in the form of a written opinion from which he took an appeal that he later dismissed in the case involving the race car assets. The plaintiff's actions, taken by her attorney, have unnecessarily prolonged the duration of the underlying bankruptcy case. The imposition of a monetary sanction is warranted as a deterrent to the debtor, his agents, or those purporting to act in his behalf, including Tracy E. Mulligan, from continuing to file similar suits in the future.

Relying upon its inherent authority to impose sanction, as well as the specific authority conferred by Rule 9011, and in the exercise of its discretion, *see Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 381–82 (1990), and *Cox v. Saunders (In re Sargent)*, 136 F.3d 349 (4th Cir.1998), this court finds that the proper sanction that should be imposed as the minimum necessary to the deter future litigation abuse is the reimbursement of the defendants' reasonable legal expenses generated in defending this groundless action. The imposition of sanctions in the amount of the defendants' reasonable costs and attorney's fees is necessary to deter future litigation and to educate the plaintiff and her attorney. The defendants [23] submitted affidavits delineating their respective legal expenses as follows:

| | |
|---|---|
| Associates | $ 34,988.36 |
| Miller & Miller | 4,962.63 |
| Charles J. Miller, Inc. | 2,527.52 |
| Mark J. Friedman, Chapter 11 trustee | + 24.450.50 |
| TOTAL | $ 66,929.01 |

The disparity in the amounts claimed to have been expended by the four parties is attributable to the fact that counsel for the trustee and Associates bore the lion's share of the work in defending against the complaint. The plaintiff has never disputed the amount of the defendants' expenses.

This Court finds the foregoing amounts claimed as legal expenses by the defendants to be fair and reasonable under the circum-

---

**23.** F. Thomas Rafferty, Esquire, counsel to the defendant, Urban N. Zink Contractors, Inc., did not file a request for reimbursement of counsel fees and expenses on behalf of his client.

stances of this case, particularly in light of the huge amount claimed as damages by the plaintiff in her groundless complaint. The plaintiff and her counsel will be ordered to reimburse to the defendants counsel fees and costs in the total amount of $66,929.01, as the defendants' legitimate expense in having to defend against this groundless suit.

The plaintiff has not provided any information to suggest that her financial condition is such that she will be unable to pay a monetary sum calculated to be the least severe but still act as a deterrent to future litigation. The sanctions imposed on the plaintiff are not calculated to unfairly restrict her access to the courts. Similarly, the attorney for the plaintiff has not presented any information to suggest that he is unable to pay a sanction calculated to be the least severe and yet continue to act as a deterrent to future abuse. The sanctions imposed on the plaintiff's attorney are not so large as to curtail his ability to practice law or cause him great financial distress. These sanctions are not being imposed in anger or in a spirit of vindictiveness, but in a sincere attempt to dissuade the debtor, the plaintiff, and their agents, assigns, and privies from attempting to undo the work of liquidating the debtor's estate.

WHEREFORE, sanctions will be imposed against Tracey E. Mulligan, Esquire, and Joanne A. Allnutt, plaintiff, jointly and severally, in the amount of $66,929.01, which is determined to be the amount necessary to compensate the defendants for their costs, attorneys' fees, and other charges incident to this groundless litigation brought by the plaintiff, which this Court has determined to have been filed and maintained without legal justification.

ORDERS ACCORDINGLY.

### *PERMANENT INJUNCTION*

As set forth in the foregoing memorandum opinion, pursuant to 11 U.S.C. §§ 105 and 363, provisions of the Chapter 11 trustees' confirmed plan of liquidation, and the inherent power of a court of equity in aid of its jurisdiction to properly administer the instant bankruptcy case, for the purposes of preventing the debtor from circumventing and negating the bankruptcy process in order to regain title to estate property validly sold by the Chapter 11 trustee and to enforce this Courts' valid orders against the fraudulent and vexatious attacks by the debtor, the plaintiff and their counsel, this Court hereby enjoins the debtor, his insiders, heirs, assigns and agents, including the plaintiff and her attorney, from filing suits and/or instigating the filing of suits in state or federal courts attacking sales of estate property or seeking damages from the purchasers of said property.

WHEREFORE, the debtor, the plaintiff, and their insiders and agents, including his, her, or their attorneys, ARE HEREBY PERMANENTLY ENJOINED from filing lawsuits in state and federal courts contesting the validity of sales of property of the bankruptcy estate by the Chapter 11 trustee, without leave of this Court and subject to further severe sanctions.

SO ORDERED.